IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**POPE and KATHLEEN MOSELEY, as parents
and next friends of P.L. MOSELEY, a minor,
and for similarly situated students,**

      **Plaintiffs,**

vs.                                                           No. CIV 04-0103 RB/RLP

**BOARD OF EDUCATION OF ALBUQUERQUE
PUBLIC SCHOOLS and PUBLIC EDUCATION
DEPARTMENT OF THE STATE OF NEW MEXICO,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant Board of Education of Albuquerque Public Schools' (APS's) Motion to Dismiss, or for a More Definite Statement (Doc. 2), filed on February 27, 2004; Defendant Public Education Department of the State of New Mexico's (NMPED's) Motion to Dismiss Claims Under Title II of the Americans with Disabilities Act for Lack of Subject Matter Jurisdiction Pursuant to the Eleventh Amendment (Doc. 17), filed on May 7, 2004; NMPED's Motion to Dismiss Class Action Allegations (Doc. 19), filed May 7, 2004; and NMPED's Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1) & (6) for Lack of Standing and Failure to State a Claim (Doc. 21), filed on May 7, 2004. Jurisdiction is founded upon 28 U.S.C § 1331.

Having reviewed the submissions of the parties and the relevant law, I find that APS's motion to dismiss or for a more definite statement and NMPED's motion to dismiss based on Eleventh Amendment immunity should be denied, and that NMPED's motion to dismiss class action allegations and motion to dismiss for failure to state a claim should be granted.

**I.     Background.**

Plaintiffs' Complaint alleges the following. Pope and Kathleen Moseley (Moseleys) are the parents of P.L. Moseley (P.L.), a minor student at Del Norte High School within the Albuquerque Public School District. (Comp. ¶ 3.) P.L. qualifies for receipt of special education based on disability. (*Id*.) The Moseleys allege that P.L. has exhausted administrative remedies under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §1415(i)(2), and Section 504 of the Rehabilitation Act (Section 504), 29 U.S.C. §794a(a)(2).

The Moseleys partially appeal the January 2, 2004 decision of the IDEA Administrative Appeal Officer (AAO). (Comp. ¶ 6.) The legal challenge to the decision includes, but is not limited to, an argument that application of *Bd. of Educ. of Hendrick-Hudson Sch. Dist. v. Rowley*, 458 U.S. 176 (1982), for justification of a lower "standard" of educational benefit for students with disabilities compared to their non-disabled peers, is contrary to the IDEA, Section 504, the Americans with Disabilities Act of 1990 (ADA), 42 U. S. C. § 12101, and the No Child Left Behind Act. (Comp. ¶ 8.) The Moseleys assert that the APS's structure and practices for delivery of education to students who are deaf and hearing impaired intentionally deny them access to a public education and to educational opportunity in violation of Titles II, III, and V of the ADA. (Comp. ¶¶ 26-27.)

The Moseleys allege class action claims on behalf of P.L. and a class of all persons who were APS students in the 2002-2003 school year, 2003-2004 school year, and continuing, and who qualify for receipt of special education services as students who are deaf or hearing impaired. (Comp. ¶¶ 9-10.) They estimate that there are approximately 125 students who would be members of the class. (Comp. ¶ 12.)

With respect to NMPED, the Moseleys assert that NMPED-appointed IDEA due process

2

hearing officers have misapplied *Rowley*; that the NMPED's policy of misinterpreting the IDEA permits New Mexico public school districts to provide a level of access and accommodation lower than that required by the ADA; and the NMPED has failed to supervise and support APS in its provision of education to students who are deaf or hearing impaired based on an illegal and discriminatory political decision to sustain the New Mexico School for the Deaf at the expense of educational opportunity for students who are deaf.  (Comp. ¶¶ 8; 14.)

**II.     Standard.**

A motion to dismiss should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all the well-pleaded factual allegations of the complaint as true and view them in the light most favorable to the non-moving party.  *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002).

**III.    Discussion.**

    **A.     APS's Motion for Partial Dismissal and for a More Definite Statement.**

APS argues that the portion of the Complaint that attacks reliance on *Rowley* should be dismissed.  In reviewing a challenge under the IDEA, the district court engages in a modified de novo review, in which it must "independently review the evidence contained in the administrative record, accept and review additional evidence, if necessary, and make a decision based on the preponderance of the evidence, while giving 'due weight' to the administrative proceedings below."  *Murray v.*

*Montrose County Sch. Dist.*, 51 F.3d 921, 927 (10th Cir. 1995).  The court must decide independently whether the requirements of the IDEA have been met.  *Id.*

The Moseleys are entitled to challenge the application and interpretation of *Rowley* by the AAO.  APS is entitled to argue that the final administrative decision represents a correct application and interpretation of the law.  Whether the AAO correctly interpreted and applied *Rowley* is a valid issue of judicial review.  *Murray*, 51 F.3d at 927.  Resolution of this question will hinge on my independent review, as described in *Murray*.  The motion to dismiss will be denied as premature.

APS argues that the Moseleys should be ordered to make a more definite statement so that they can adequately prepare a responsive pleading.  A party may move for a more definite statement of any pleading that is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading."  FED. R. CIV. P. 12(e).  Motions for more definite statement are disfavored in light of the liberal discovery provided under the federal rules.  *Resolution Trust Corp. v. Thomas*, 837 F.Supp. 354, 355 (D. Kan.1993).  Such motions are granted only when a party is unable to determine the issues requiring a response.  *Id.*  Rule 12(e) is designed to remedy unintelligible pleadings, not merely to correct for lack of detail.  *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 35 (S. D. N. Y. 1992).  The question of whether to grant a motion for a more definite statement is committed to the sound discretion of the trial court.  *Old Time Enters. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir. 1989).

Federal Rule of Civil Procedure 8 (a)(2) requires that a complaint include only a short and plain statement of the claim showing that the pleader is entitled to relief.  Taken as a whole, the Complaint satisfies Rule 8(a)(2).  The allegations are not unintelligible and are sufficient to allow APS to frame a responsive pleading.  The motion for a more definite statement will be denied.

> **B.     NMPED's Motion to Dismiss Claims Under Title II of the Americans with Disabilities Act for Lack of Subject Matter Jurisdiction Pursuant to the Eleventh Amendment.**

NMPED argues that the Moseleys' Title II ADA claim is barred by the Eleventh Amendment. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in, or be denied the benefits of, the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Moseleys allege that NMPED violated Title II by abdicating its responsibility to supervise and support APS in its provision of education to students who are deaf or hearing impaired based on an illegal and discriminatory political decision to sustain the New Mexico School for the Deaf at the expense of educational opportunity for students who are deaf.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U. S. CONST. amend. XI. The Supreme Court has "consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144 (1993).

The Court has recognized three exceptions to Eleventh Amendment immunity: (1) suits against state officials seeking prospective injunction relief; (2) waiver of Eleventh Amendment immunity by the state; and (3) explicit Congressional enactment through legislative powers under § 5 of the Fourteenth Amendment. *See Idaho v. Coeur d'Alene*, 521 U.S. 261, 267 (1997); *Seminole Tribe v. Florida*, 517 U.S. 44, 73 (1996). The first two exceptions are inapplicable because no state official has been named as a defendant and there is no indication that the state has consented to suit.

Therefore, the question is whether Congress abrogated Eleventh Amendment immunity by enacting Title II.

Congress may abrogate Eleventh Amendment immunity "when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.' " *Board of Trustees of the University of Alabama v. Garrett,* 531 U.S. 356, 363 (2001) (quoting *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000)).  In enacting Title II of the ADA, Congress unequivocally intended to abrogate the states' Eleventh Amendment immunity.  *See* 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter.").  *See also Tennessee v. Lane*, ___ U.S. ___, 124 S.Ct. 1978, 1985 (2004).  The true question is whether Congress acted pursuant to a valid grant of constitutional authority under § 5 of the Fourteenth Amendment.

In order to determine whether Congress abrogated Eleventh Amendment immunity pursuant to a valid grant of constitutional authority, I must examine (1) whether the legislative record shows that Congress identified a history and pattern of irrational discrimination by the states against the disabled, and (2) whether the rights and remedies created by Title II are congruent and proportional to the targeted violations.  *Garrett,* 531 U.S. at 357.

In *Garrett*, the Court held that suits in federal court by state employees against a state to recover money damages under Title I of the ADA are barred by the Eleventh Amendment.  *Garrett,* 531 U.S. at 360.  The Court in *Garrett* explicitly limited its holding to Title I of the ADA, and specifically declined to decide whether Eleventh Amendment immunity bars claims against a state under Title II of the ADA.  *Garrett,* 531 U.S. at 360 n. 1.

Although the Title II question was left open, *Garrett* led the Tenth Circuit to conclude that suits by individuals against states under Title II are also barred by the Eleventh Amendment. *See Thompson v. Colorado*, 278 F.3d 1020, 1047-55 (10th Cir. 2001). In *Thompson*, the plaintiffs mounted a Title II challenge to Colorado's assessment of fees for handicapped parking permits. *Id.*, 278 F.3d at 1022. The Tenth Circuit found that Congress had not identified a history and pattern of unconstitutional discrimination by the states against the disabled. *Thompson*, 278 F.3d at 1034. Based on this finding, the Tenth Circuit held that Title II was not a valid abrogation of the states' Eleventh Amendment immunity. *Id.*

NMPED relied on *Thompson* in support of its assertion of Eleventh Amendment immunity. After NMPED filed this motion, the Supreme Court held that Title II of the ADA validly abrogated Eleventh Amendment immunity through enforcement of the Fourteenth Amendment, as applied to cases implicating the fundamental right of access to the courts. *Tennessee v. Lane*, ___ U.S. ___, 124 S.Ct. at 1993. The Court found that "Congress enacted Title II against a backdrop of pervasive unequal treatment in the administration of state services and programs, including systematic deprivations of fundamental rights." *Lane*, 124 S.Ct. at 1989. *Lane* undercut the Tenth Circuit's holding in *Thompson* because it found that Congress had identified a history and pattern of unconstitutional discrimination by the states against the disabled.

In its reply, NMPED attempts to distinguish *Lane* by arguing that the right to a public education is not a fundamental right akin to access to the courts. The language of *Lane* does not support this stance. While admitting that, taken as a whole, Title II may not be appropriately tailored to serve its objectives, the Court held that "Title II unquestionably is valid § 5 legislation as it applies to the class of cases implicating the accessibility of judicial services." *Lane*, 124 S.Ct. at 1993. The

7

Court identified eight general areas where there has been a demonstrated history of irrational discrimination by states against the disabled: voting; marriage; jury eligibility; state mental institutions; zoning decisions; *public education*; the penal system; and *access to the judicial system. Id*. at 1989 (emphasis added). The Court's inclusion of public education in the same category as access to the courts distinguishes the instant case from *Thompson*, which concerned parking permit fees, an area that was not identified with a demonstrated history of irrational discrimination.

The reasoning of *Lane* indicates that Title II, as applied to cases implicating accessibility of public education, is valid § 5 legislation. *See McCarthy ex rel. Travis v. Hawkins,* 2004 WL 1789945, * 17 (5th Cir. Aug. 11, 2004) (Garza, J. concurring in part and dissenting in part) (to the extent that Title II regulates the process by which disabled persons are institutionalized and their treatment once they have been committed, it may be valid § 5 legislation). As applied to public education, the rights and remedies created by Title II are congruent and proportional to the targeted violations. *Lane*, 124 S.Ct. at 1993; *Garrett,* 531 U.S. at 357. Accordingly, the Moseleys' Title II claim against the NMPED is not barred by the Eleventh Amendment. NMPED's motion to dismiss for lack of subject matter jurisdiction pursuant to the Eleventh Amendment will be denied.

### C.     NMPED's Motion to Dismiss Class Action Allegations.

NMPED argues that the class action claims should be dismissed because the putative class members have not exhausted administrative remedies. Judicial review of an IDEA claim is generally permitted only after a claimant exhausts state administrative remedies. *See* 20 U.S.C. § 1415(e)(2). It is undisputed that the putative class members did not pursue the administrative remedies available under the IDEA.

The purposes of the IDEA exhaustion rule are to permit agencies to exercise discretion and

apply their expertise, to allow the complete development of the record before judicial review, to prevent parties from circumventing established procedures, and to avoid unnecessary judicial decisions by giving the agency an opportunity to correct errors. *Urban v. Jefferson County Sch. Dist.*, 89 F.3d 720, 724 (10th Cir. 1996).

Exhaustion is excused when pursuit of administrative remedies would be (1) futile; (2) provide inadequate relief; or (3) where plaintiffs allege structural or systemic failure and seek systemwide reforms. *Ass'n. for Cmty. Living in Colorado v. Romer*, 992 F.2d 1040, 1044 (10th Cir. 1993). The plaintiff has the burden of demonstrating the applicability of an exception to the exhaustion requirement. *Doe By and Through Brockhuis v. Arizona Dept. of Educ.*, 111 F.3d 678, 681 (9th Cir. 1997); *Eads v. Unified Sch. Dist.*, 184 F.Supp.2d 1122 (D. Kan. 2002).

The Moseleys have failed to show that exhaustion by the putative class members would be futile or would provide inadequate relief.  P.L. obtained at least partial relief in the underlying administrative action.  The Moseleys do not challenge the procedural aspects of the administrative process; they challenge the application and interpretation of the substantive law.  The application of *Rowley* depends on the facts of each student's case.  Allowing the class action claims to go forward without requiring exhaustion would undermine the purposes of the IDEA exhaustion requirement. *See Urban*, 89 F.3d at 725.  The first two exceptions to the exhaustion requirement are, therefore, inapplicable.

The third exception requires an allegation of a systemic failure.  The Moseleys challenge the NMPED's policies that affect individual students and APS's development of IEPs for individual students.  They essentially challenge determination by APS of each student's hearing ability and educational status, not the procedures or framework for assessment.  The Tenth Circuit found in

9

*Romer* and *Urban* that similar allegations were not systemic.

In *Romer*, the plaintiffs alleged the Colorado Department of Education's policies regarding extended school days and extended school years discriminated against disabled students in violation of the IDEA and the Equal Protection Clause. *Id.*, 992 F.2d at 1043. The Tenth Circuit held the plaintiffs' failure to exhaust was not excused because the violations alleged and the relief requested targeted not structural or due process concerns, but the effect of a single component of the state's educational program on individual students. *Romer*, 992 F.2d at 1045. Similarly, in *Urban*, the Tenth Circuit held that the student was required to exhaust administrative remedies for his challenge to the IEP developed by his school district because his claims directed at a single IEP were not systemic. *Urban,* 89 F.3d at 725.

The issues raised by the Moseleys require a detailed case-by-case analysis of educational program eligibility and availability. Such a review is better suited to the established administrative process than the federal courts, at least in the first instance. *See Mrs. M. v. Bridgeport Bd. of Educ.*, 96 F.Supp.2d 124, 135 (D. Conn. 2000). Because the exceptions to the exhaustion requirement are inapplicable, the class action claims should be dismissed for failure to exhaust administrative remedies.

In the alternative, the Complaint fails to satisfy the prerequisites to a class action.[1] In order to bring a class action, a party must demonstrate that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the

---

[1] Consideration of Rule 23 factors is appropriate. The Supreme Court has stated that it is sometimes "plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claims." *Gen. Tel. Co. Southwest v. Falcon*, 457 U.S. 147, 160 (1982). In addition, Rule 23(c)(1) directs district courts to determine "as soon as practicable" whether the proposed class satisfies the requirements of Rule 23.

representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a). The burden of proving each of the requisite elements of Rule 23 is on the plaintiff, and failure to prove any element precludes certification. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613, (1997); *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988).

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The typicality standard does not require that every member of the class need be in an identical situation as the named plaintiffs. *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988). However, "a class representative must 'possess the same interest and suffer the same injury' as the class members." *East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (citations omitted). The Complaint contains no information indicating that P.L. suffered an injury similar to the alleged injuries suffered by the putative class members. Furthermore, the alleged class does not satisfy the numerosity requirement. The Moseleys have alleged that the class is made up of approximately 125 deaf and hearing impaired students in the APS district. The putative class is not so numerous that a class action is necessary to avoid redundant lawsuits. Each member has the ability and incentive to exhaust administrative remedies and bring suit. *See Ansari v. New York Univ.*, 179 F.R.D. 112 (S. D. N. Y. 1998). Under these circumstances, the class action allegations fail to satisfy Rule 23(a).

    **D.**    **NMPED's Motion to Dismiss Pursuant to FED. R. CIV. P. 12 (b)(1) & (6) for Lack of Standing and Failure to State a Claim.**

NMPED argues that it is not a proper defendant because it did not provide services directly to P.L. The IDEA provides that the state educational agency (SEA) is responsible for general supervision and for ensuring that the statutory requirements are met. *See* 20 U.S.C. § 1412 (a) (11).

This responsibility is reflected in the governing regulations. *See* 34 C.F.R. §300.600 (a) (SEA has responsibility for all educational programs). Courts have held state educational agencies liable for failure to provide a free appropriate education under IDEA. *St. Tammany Parish Sch. Bd. v. La.*, 142 F.3d 776, 783-84 (5th Cir. 1998); *Gadsby v. Grasmick*, 109 F.3d 940, 952 (4th Cir. 1997). *See also Bitsilly v. B.I.A.*, 253 F.Supp.2d 1257, 1267 (D. N.M. 2003) (holding that BIA was not absolved of responsibility to disabled children attending tribally controlled schools). The Moseleys sufficiently state a claim that the policies of NMPED violate the ADA. Accordingly, dismissal of NMPED as a party would be inappropriate on this ground.

NMPED asserts that the Moseleys fail to state a claim because the NMPED is not responsible for controlling or financing the New Mexico School for the Deaf, and that the Moseleys lack standing to assert any claim based on the existence of operation of the School for the Deaf. The Moseleys concede that they take no position on the viability of the School for the Deaf; they allege that the policies of NMPED contravene the ADA. The Moseleys have standing because P.L. was allegedly denied a free appropriate public education. *Bitsilly v. B.I.A.*, 253 F.Supp.2d at 1262. Dismissal would be inappropriate on these grounds.

NMPED correctly contends that the Moseleys failed to exhaust administrative remedies on behalf of P.L. with respect to NMPED. The Moseleys do not dispute that they failed to join NMPED in the administrative proceeding. However, they claim that exhaustion of administrative remedies should be excused on the basis of futility because NMPED refused to appoint a hearing officer to hear claims against it in another case.

NMPED regulations permit the filing of a formal complaint against the agency for failure to comply with the IDEA. *See* NMAC 6.31.2.13 H. The fact that NMPED may have refused to appoint

a hearing officer in another case is not germane to the issue of whether the plaintiffs in this case exhausted administrative remedies. The Moseleys have failed to demonstrate that the case falls within any of the exceptions to the exhaustion requirement. The IDEA claims against the NMPED should be dismissed for failure to exhaust administrative remedies.

NMPED argues that the Complaint fails to state a claim under Title III or Title V of the ADA. Title III applies only to private entities. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 683 n. 38 (2001); *Bloom v. Bexar Co.*, 130 F.3d 722, 726-27 (5th Cir. 1997). NMPED and APS are not private entities. Title V prohibits retaliation for the assertion of ADA rights. *See* 42 U.S.C. §§ 12203(a) and (b). The Moseleys have alleged no facts that would support a claim for retaliation. After accepting all the well-pleaded factual allegations of the complaint as true and viewing them in the light most favorable to the Moseleys, I conclude that they can prove no set of facts in support of these theories that would entitle them to relief. *See* FED. R. CIV. P. 12(b)(6). The Title III and V claims will be dismissed for failure to state a claim.

NMPED asserts that the Moseleys have failed to state a claim under Title II of the ADA and Section 504 of the Rehabilitation Act. To state a Title II claim, the Moseleys must allege (1) that P.L. is a qualified individual with a disability; (2) that he was excluded from the benefits or services of a public entity; and (3) that his exclusion was by reason of his disability. *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) (quoting 42 U.S.C. § 12132). To state a Section 504 claim, the Moseleys must allege that (1) P.L. is handicapped under the Act; (2) P.L. is "otherwise qualified" to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminated against him. *See Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1151 (10th Cir. 1999); *Woodman v. Runyon*, 132 F.3d 1330, 1337 (10th Cir. 1997).

13

The Complaint states that NMPED "has abdicated its responsibility to supervise and support APS in its provision of education to students who are deaf and hearing impaired based on an illegal and discriminatory political decision" to sustain the New Mexico School for the Deaf.  (Compl. ¶ 14(B).  Nowhere in the Complaint do the Moseleys state that P.L. was excluded from services or benefits on the basis of disability.  While the Moseleys disagree with the administrative decision, this does not support the conclusion that any denial of relief was based on the fact that P.L. is disabled.  Conclusory allegations are insufficient to survive a 12(b)(6) motion.  *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).  The Complaint fails to state a claim under Title II or Section 504.  *See* FED. R. CIV. P. 12(b)(6).  The motion to dismiss the claims against NMPED should be granted.

## IV.   Conclusion.

APS's motion to dismiss and motion for a more definite statement should be denied.  NMPED's motion to dismiss the Title II claim based on Eleventh Amendment immunity should be denied.  NMPED's motion to dismiss the class action allegations and motion to dismiss for failure to state a claim should be granted.

**WHEREFORE,**

**IT IS ORDERED** that Defendant APS's Motion to Dismiss, or for a More Definite Statement (Doc. 2), filed on February 27, 2004, and Defendant NMPED's Motion to Dismiss Claims Under Title II of the Americans with Disabilities Act for Lack of Subject Matter Jurisdiction Pursuant to the Eleventh Amendment (Doc. 17), filed on May 7, 2004, are **DENIED**.

**IT IS FURTHER ORDERED** that NMPED's Motion to Dismiss Class Action Allegations

(Doc. 19), filed May 7, 2004, and Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1) & (6) for Lack of Standing and Failure to State a Claim (Doc. 21), filed on May 7, 2004, are **GRANTED**.

_____
**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**