# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

POPE and KATHLEEN MOSELEY, as parents and next
friends of P.L. MOSELEY, a minor and for similarly
situated students,

        Plaintiff,

       vs.                              No. CIV-04-0103 JC/RLP

BOARD OF EDUCATION OF ALBUQUERQUE
PUBLIC SCHOOLS and PUBLIC EDUCATION
DEPARTMENT OF THE STATE OF NEW MEXICO,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendant Albuquerque Public School's

Motion For Judgment On Idea Claims, filed July 19, 2005 (*Doc. 68*), Plaintiff's Idea Brief In

Chief, filed July 26, 2005 (*Doc. 72*), and Defendant APS' Motion For Summary Judgment On

Plaintiffs' Section 504 And ADA Claims, filed October 27, 2005 (*Doc. 78*).  The Court has

reviewed the Motions, the memoranda and exhibits submitted by the parties, and the relevant

authorities.  The Court finds the Motions to be GRANTED in part and DENIED in part.

## I.      Background

This request for administrative review and suit for additional federal claims arises from the

education provided to Plaintiff by the Albuquerque Public Schools District ("District").  Plaintiff

was born with Goldenhar's syndrome, a condition which was responsible for his complete

deafness and a visual impairment, which limits his ability to track textual information.  Plaintiff has

also been diagnosed with Attention Deficit Disorder ("ADD"), which interferes with his ability to process information in class.  Plaintiff attended public school in Albuquerque since the third grade. He attended high school at Del Norte High School, until his graduation in 2005.  While a student at Del Norte, Plaintiff was provided with an Individualized Education Plan ("IEP"), as mandated by the Individuals with Disabilities Education Act ("IDEA").  An IEP is a written statement of the student's current educational performance, his goals and objectives, his expected progress, as well as the means to achieve that progress.  Plaintiff had an IEP team to assist in both his plan's yearly creation and its implementation. This team was comprised of several various experienced education professionals, as well as Plaintiff and his parents. Some of Plaintiff's accommodations, as identified in his IEP, included the provision of an interpreter and note-taking services, as well as shortened homework assignments and preferential seating.

Plaintiff was a "mainstream" student, as he went to the same classes as his non-deaf peers, and relied upon an interpreter for his interaction with both his teachers and his peers.  Plaintiff and his family signed at home using a language known as Signed Exact English II ("SEE II"), which accurately conveys English words, tenses and grammar.  At school, however, Plaintiff's interpreters used CASE (conceptually accurate signed English) and ASL (American Sign Language), which is based on French word order and does not represent all words as they are spoken, but is used more to convey information.  When a specific vocabulary word did not have a sign for it, it was finger-spelled to Plaintiff.   Although Plaintiff did not use these other sign languages at home, he was comfortable and proficient enough with them to understand them at school.  Plaintiff is also proficient in written English.   Additionally, Plaintiff was provided a laptop computer by the Albuquerque school district to aid in his communication and note-taking

2

abilities.  While Plaintiff was relying solely on these services and accommodations, his grades were better than average, as he received mostly As and Bs.  Plaintiff also passed all portions of the New Mexico Competency Exam on his first try, during his sophomore year.

Plaintiff's parents were very involved in his education, and Plaintiff's mother, in particular, took an active role in discovering new and cutting-edge educational options for the deaf. Plaintiff's mother learned of a new method of classroom communication which could be available, and which would provide a real-time written record of what was being said in the classroom.  This system of real-time captioning, known as Communication Access Real Time Captioning ("CART"), requires the use of a court reporter instead of an interpreter, but does not work exactly as a court reporter would in transcribing the complete written record.  Instead, the court reporter in the classroom condenses the information that appears on the student's screen. This information is also able to be printed, so that Plaintiff would then also have the written record to take home.  This option was first raised during Plaintiff's freshman year in high school.  After an IEP team meeting discussing the option of a trial period of use for this device, Defendant decided to implement the realtime system in Plaintiff's 10th grade English class for a nine-week period, the second quarter of the first semester.  Several weeks after this trial period, another IEP team meeting was held where Defendant decided that the continued use of CART was unnecessary and that the interpreter route was better for both Plaintiff and the District and retained those services. Defendant justified this choice by the fact that Plaintiff's grades did not improve in the period of time that CART was used, CART was very expensive ($41,000 per class), and Plaintiff was able to benefit from and work with an interpreter.

At this time, Plaintiff pursued his administrative remedies against Defendant by filing a due

process IDEA claim which demanded real-time captioning for his 11th grade Chemistry class, as well as the provision of captioned videos and films; further teacher training and certification; provision of adequate transition services; provision of IEP modifications and accommodations; and the provision of an advanced ASL class (ASL II).   A due process hearing was held September 16-19th and October 3rd of Plaintiff's 11th grade year.  Immediately prior to the hearing, Plaintiff changed the request of the class for which CART was to be provided from Chemistry to U.S. History.  The initial due process hearing officer (DPHO) found that Plaintiff did require CART in his U.S. History class for one semester, with a full evaluation of the services to follow,  in order to have a free appropriate public education ("FAPE"), as required by IDEA.

An appeal filed by the Albuquerque School District, however, led to different results, as the Administrative Appeal Officer's ("AAO") decision was in favor of Defendant for almost all of the claims.  While the AAO most significantly held that CART was not needed in order for Plaintiff to receive a FAPE, and that adequate transition services were provided by Plaintiff's IEP, she also decided that there was a failing in Plaintiff's IEP modifications and accommodations. She, therefore, ordered several remedies, including completing a neuropsychological exam and hiring a paid note taker for Plaintiff's U.S. History class.  As to all other issues, the AAO found for Defendant.

In response to the AAO decision, Plaintiff filed an action in this Court, as is their right, requesting review of the IDEA administrative claims decided, specifically the decisions that denying CART and appropriate transition services did not deny FAPE, as well as initiating some federal claims.  Plaintiff seeks redress on two federal claims under the Rehabilitation Act of 1973 (Section 504) and the Americans with Disabilities Act ("ADA").  Defendant filed a counter-claim,

4

asking for a review of the IDEA claims as well, and challenging two issues from the AAO order: requiring the completion of the neuropsychological exam and hiring a paid notetaker.   Although Plaintiff's Complaint requests review and reversal of the final administrative decision (meaning presumably review of all claims in which Plaintiff did not prevail), Plaintiff's briefing concentrates on the two issues of which the AAO reversed the DPHO's decision: the need for CART for a FAPE and the lack of appropriate transition services.

## II.     IDEA Claims

### A.     Standard of Review

The administrative review of IDEA claims is not typical of the kind of administrative review that the district court normally engages in.  Indeed, under IDEA, the Court applies a modified *de novo* standard of review to the administrative proceedings below. *L.B. ex rel. K.B. v. Nebo Sch. Dist.,* 379 F.3d 966, 973 (10th Cir. 2004) (citation omitted).  This means that the district court independently reviews the evidence contained in the administrative record, accepts and reviews additional evidence, if necessary, and makes a decision based on the preponderance of the evidence, while giving "due weight" to the administrative proceedings below.  *See O'Toole v. Olathe Dist. Schs. Unified Sch. Dist. No. 233*, 144 F.3d 692, 698 (10th Cir. 1998).  In a case such as this, with two decisions, by both the DPHO and the AAO, due weight is to be given to the AAO's decision on issues with which she disagreed with the DPHO, unless the DPHO's decision involved credibility determinations, which the record supports.   *Id*. at 699.

Here, the AAO did not believe that any of her decisions turned on credibility in this case, and that there was little disagreement about underlying evidentiary facts among the witnesses in the hearing.  AAO Decision at 12.   Although Plaintiff argues that his opinion about how well

5

CART works for him makes the issue into one of credibility, this Court agrees that all decisions made only need consider predominately how the law is applied to the facts.  Therefore, the Court will give due weight to the AAO's decisions which were at odds with the DPHO.

The party challenging the outcome of the state administrative decision in an IDEA case bears the burden of proof.  *Johnson v. Indep. Sch. Dist. No. 4*, 921 F.2d 1022, 1026 (10th Cir. 1990).   Therefore, the burden of proof falls on both Plaintiff and Defendant with respect to their various claims challenging the decision of the AAO.

> 1.      Plaintiff's Request for Additional Evidence

Plaintiff interprets this Court's "modified de novo review" as grounds to allow additional evidence for the Court to review at this stage.  Plaintiff suggests this Court engage in its own statutory interpretation, although the Tenth Circuit has considerably narrowed the interpretation of 20 U.S.C. §1415(i)(2)(B)(ii) for us already.  This section reads that "[T]he court shall hear additional evidence at the request of either party."  The Circuit, however, has interpreted this language very restrictively:

> "Although the district court may accept additional evidence, such evidence is merely supplemental to the administrative record.  The district court's proceedings must maintain the character of review and not rise to the level of a *de novo* trial."

*Nebo*, 379 F.3d at 974 (citations omitted).

All of the additional evidence that Plaintiff wishes the Court to consider pertains to, or occurs after, the time of the original due process hearing.  Plaintiff claims that this additional evidence, although occurring after the hearing, is "necessary both to proper resolution of the underlying administrative IDEA claims, but also to the crafting of any appropriate equitable remedies."  Pl.'s Br. in Chief at 10.  Plaintiff requests a hearing to present this additional evidence.

Defendant rejects the consideration of this additional evidence as it (1) applies to claims made which have not exhausted all administrative remedies and (2) would alter the character of this review into a *de novo* trial.  Def.'s Resp. Br. at 3.

The Court agrees with Defendant that to supplement the administrative record at this time would be inappropriate and unnecessary.  Plaintiff's request to supplement the record with events occurring after the administrative hearing defeats the purpose of the administrative process.  It is inappropriate for a district court to review other claims before the two levels of hearing officers, as prescribed in the IDEA review process, have had a chance.  Although the Court recognizes that this might be a cumbersome process for Plaintiff, it also ensures that the people who are closer to the decision-making process and its actual implementation receive the first bite at the apple.

Further, allowing this additional evidence to come in is not necessary for the Court to provide a sufficient review of this case.  Plaintiff can only cite to an unpublished, out-of-circuit, district opinion for support that additional evidence should be allowed.  Yet, this support is extremely unpersuasive, so it will not be analyzed here.  The events occurring after Plaintiff's hearing are not relevant to the decision before the Court, and evidence of these events will not be considered.

Therefore, the request for a hearing to present additional evidence is denied, and the Court will proceed to review both briefs for judgment on the IDEA claims.

**B.      Discussion**

1.      Failure to Exhaust Administrative Remedies for Certain Claims

The issue that was ultimately litigated in Plaintiff's initial due process hearing was whether real-time captioning (CART) would be necessary for his eleventh grade U.S. History class.

7

Defendant asserts that Plaintiff did not make any other claims at the administrative level, so they are inappropriately brought here.  Defendant wishes to restrict the scope of Plaintiff's complaint in this matter as to whether CART was appropriate for the 11th grade history class, not whether it would have been appropriate for any other classes or whether SEE II should have been used by the District interpreters to communicate with Plaintiff.

The Court agrees that because Plaintiff specifically argued in his due process hearing that the CART technology was necessary in his history class for very specific reasons, such as the heavy lecture nature of the class and the need of learning so much contextual vocabulary, that to expand that argument now, without any additional evidence of its broad necessity would be short-circuiting the administrative process that is in place for a reason.  Under IDEA, a Plaintiff must exhaust his administrative remedies before proceeding in federal court.  *Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1063-66 (10th Cir. 2002).  The purpose of exhaustion is to permit agencies to exercise their discretion and to apply their expertise.  *Ass'n for Commty. Living in Co. v. Romer*, 992 F.2d 1040, 1043 (10th Cir. 1993). Additionally, it allows the complete development of the record, prevents parties from circumventing the procedures established by Congress, and avoids unnecessary judicial decisions by giving the agency an opportunity to correct errors.  *Id.*

In *Urban v. Jefferson County School District*, a similar situation to the present case arose, as a Plaintiff tried to expand the litigation to include related claims about separate IEPs. 89 F.3d 720, 724 (10th Cir. 1996).  While Plaintiff in the case before this Court is not trying to have a judicial review of a separate IEP, he is trying to have a review of an issue that was not part of his previous IEP.  Plaintiff did not initially request the use of CART in all of his classes, only in one.

As in *Urban*, there is no administrative record regarding the two issues Plaintiff now proposes that the Court decide, and thus, no basis for a judicial review.  *Id*. at 725.

Plaintiff argues that the request that CART be provided for one class was a request for remedy, and not meant to be a limitation on Plaintiff's need for the service.  Plaintiff also points to their Due Process Hearing Request which accuses the district of not providing the service *as needed*, as contemplating that CART could be provided for every class (emphasis in the original).  There is no hearing record of the consideration that the CART be provided as needed, however, but only a record of how the service would affect Plaintiff for the one class considered.  The Court cannot review mere supposition or conjecture about how a hearing regarding the presence of CART throughout Plaintiff's school day would have presented or decided the issue.

Therefore, any claims regarding the appropriateness of CART for classes outside of U.S. History, or for the effectiveness of the interpreters using SEE II services have not been administratively exhausted at this point, and are inappropriately brought.  They will not be considered.

2.      Need of Real-Time Captioning for Free Appropriate Public Education

The seminal case regarding whether a school district has met its obligation to provide a FAPE  is *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176 (1982). *Rowley*, like the present case, involved a deaf student who was determined to not require additional support in the classroom in order for the school district to provide her a FAPE. Additionally, *Rowley* is the case that the AAO relied upon when analyzing the law to make her decision.  The AAO examined both the procedural and substantive tests necessitated by Rowley. *Id*. at 207; AAO Decision at 14-18.  Her application of *Rowley* in this manner does not appear to

9

be disputed by Plaintiff as much as his argument that *Rowley* is completely inapplicable at all. Plaintiff argues that *Rowley* is distinguishable from the present case for several reasons.  Plaintiff suggests (1) that the 1997 IDEA statute passed supercedes *Rowley*; (2) Plaintiff in this case is remarkably distinguishable from Amy Rowley; (3) deference to schools about appropriate educational choices is illogical when schools demonstrate lack of knowledge; and (4) choice removed is educational opportunity denied.

In *Rowley*, the Supreme Court held that a school district had met its obligation to provide a FAPE by allowing "access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child." 458 U.S. at 203.  Plaintiff claims that the Court's method of determining their holding amounted to "a question of statutory interpretation." *Id*. at 179.  Since this time, Congress has tinkered somewhat with the IDEA statute, particularly in this case, an amendment and additional prefatory language in 1997. Plaintiff claims that the changes mean that the *Rowley* standard is now inapplicable. Defendant avers otherwise.

        a.      1997 Reauthorization of IDEA and 20 U.S.C. §1414(d)(3)(B)(iv) and (v)

Plaintiff indicates that the change in wording of the amended 1997 IDEA statute means that Congressional intent has changed and that the educational standards of IDEA should be heightened.  Plaintiff also construes this to mean that *Rowley* should therefore be applied differently.  Defendant rebuts this argument by pointing to a string of other circuits who have explicitly rejected this line of reasoning.

The language of these 1997  legislative findings, which are the cause of so much

contention, reads as follows: [to help special needs children] "meet ..., to the maximum extent possible, those challenging expectations that have been established for all children" and prepare them to "lead productive, independent, adult lives, to the maximum extent possible." 20 U.S.C. § 1400(c)(5)(E).

The First Circuit case of *L.T. v. Warwick Sch. Comm.*, 361 F.3d 80, 83 (1st Cir. 2004), held that this new language did not overrule *Rowley*, but indeed only articulated the importance of teacher training. The First Circuit also noted that it was not alone in its decision to still follow the *Rowley* standard, as several other circuits had reached the same conclusion. *Id.* (citing *Mo. Dep't of Elem. & Secondary Educ. v. Springfield R-12*, 358 F.3d 992, 999, n.7 (8th Cir. 2004); *Evanston Cmty. Consol. Sch. Dist. No. 65 v. Michael M.*, 356 F.3d 798, 802, 804 (7th Cir. 2004); *A.B. ex rel. D.B. v. Lawson*, 354 F.3d 315, 319 (4th Cir. 2004).

Unfortunately, the Tenth Circuit has not explicitly and officially held that *Rowley* still applies despite the wording of the 1997 amendment. Defendant cites to *O'Toole v. Olathe Unified Sch. Dist. No. 233*, 144 F.3d 692, 698 (10th Cir. 1998) for the proposition that the Circuit "continue[s] to follow *Rowley*" (Def.'s Resp. at 15), yet it is made clear at the very beginning of *O'Toole* that this issue is not being decided, as the court is using the pre-amendment version of the Act. *Id.* at 695, n.1. Defendant also cites to a Tenth Circuit unpublished opinion for the same authority.[1]  Contrary to Defendant's interpretation, however, in *Logue v. Unified Sch. Dist. No. 512, Shawnee Mission*, the Court did not distinctively hold that *Rowley* was still

---

[1]The Tenth Circuit Rule 36.3(B) states: "Citation to an unpublished decision is disfavored. But an unpublished decision may be cited to if: (i) it has persuasive value with respect to a material issue that has not been addressed in a published opinion; and (ii) it would assist the court in its disposition." Here, Defendant proposes that this case has unique persuasive value and would assist the Court, therefore, we examine it.

applicable to IDEA even with the 1997 amendments.  While the similarity of the facts in *Logue* to the present case tends to make it seem more persuasive, it really is not applicable, as *Logue* pertains to facts occurring before 1997, and the IDEA amendment is not applied retroactively. *Fowler v. Unified Sch. Dist. No. 259*, 128 F.3d 1431, 1436 (10th Cir. 1997).  Because the two above Tenth Circuit cases involved facts occurring pre-amendment, their relevance to the problem before the Court is minimal at best.

The Court can look to, however, a spate of district court cases within the Tenth Circuit which have been decided since the 1997 IDEA amendments were in effect.  These cases do reinforce the notion that *Rowley* is still looked to as the benchmark for deciding IDEA claims, despite the 1997 changes. *See Sanders v. Santa Fe Pub. Sch.*, 383 F.Supp.2d 1305, 1310 (D.N.M. 2004); J*ohnson ex rel. Johnson v. Olathe Dist. Sch. Unified Sch. Dist. No. 233, Special Services Div.*, 316 F.Supp.2d 960, 962-63 (D. Kan. 2003); *L.B. v. Nebo Sch. Dist.*, 214 F.Supp. 2d 1172, 1182 (D. Utah 2002)(rev'd on other grounds); *Wiesenberg v. Bd. of Educ. of Salt Lake City Sch. Dist.*, 181 F.Supp.2d 1307, 1312 (D. Utah 2002).

Plaintiff also argues that the enactment of Section 1414(d)(3)(B)(iv) supplies a congressional intent to impose a different review standard than *Rowley*.  This Section does not explicitly state that a new standard of evaluation should be used, but requires the IEP team "to consider" several factors regarding a child's communication.  The Section immediately following, Section 1414(d)(3)(B)(v),  requires the IEP team "to consider whether the child requires assistive technology devices and services."  Defendant counters that there is no question Plaintiff's IEP team considered many factors when determining what educational plan would best suit his needs. Indeed, Defendant points out that the IEP not only considered the option of real-time captioning,

but actually implemented it for a nine-week period.

The Court agrees with Defendant. Requiring an IEP team "to consider" various factors does not mean that the *Rowley* standard is somehow overruled. It also does not indicate that Defendant did not live up to its burden of considering different factors about Plaintiff's communication or his need of assistive technology. Indeed, it appears that Defendant did very seriously consider whether Plaintiff needed the technology provided by CART to assist him with his communication, by providing him with a nine-week trial of the process.

b.      Similarities between the two Plaintiffs

Plaintiff suggests that the differences between Plaintiff and Amy Rowley need to be taken into account when analyzing *Rowley* as the basis for a decision. Plaintiff claims that these differences, such as their age and grade in school, as well as their disability issues, indicate that more services should have been provided to Plaintiff. Defendant argues, however, that essentially Plaintiff and Amy Rowley are the same in their situation, as they were both in the situation of, "a handicapped child who is receiving substantial specialized instruction and related services, and who is performing above average in the regular classrooms of a public school system." *Rowley*, 458 U.S. at 202.

Amy Rowley was a first grade student who was not being provided with an interpreter. *Id*. at 184-85. Instead, her school provided the same services that had worked for her in kindergarten: the supply of an FM hearing aide, supportive tutoring, and speech and language therapy. *Id*. Her school conducted a two-week trial period with an interpreter, but her IEP team eventually decided that it was not necessary. *Id*. at 185. Defendant argues that Plaintiff is a high school version of this situation, as he is in the average range of intelligence earning average or

better than average grades, and was ranked in the top one-third of his class at the end of his 10th grade year. Defendant does concede that there are differences between the services provided to Amy Rowley and Plaintiff, but argues that the services provided to Plaintiff are far better. The trial period for Amy Rowley was only two weeks, compared to the nine-week trial for Plaintiff. *Id*. at 184. The decision to deny Amy Rowley the services of an interpreter was affirmed by the Supreme Court. *Id*. at 209-210.

Plaintiff makes much out of a *Rowley* footnote which states, "[w]e do not hold today that every handicapped child who is advancing from grade to grade in a regular public school system is automatically receiving a 'free appropriate public education.'" *Id*. at 203, n.25. This was not the case however, in either the Amy Rowley situation or the Plaintiff's. In *Rowley*, although Amy was being advanced from grade to grade, the Court also considered "the special services and professional consideration" afforded by the school district in question. *Id*. Here too, the Court must look at the whole picture, and the picture painted by the present facts indicates that Plaintiff was not merely being passed from grade to grade. Although Plaintiff may not have grasped all the material presented to his parents' satisfaction, he was apparently learning enough to meet the standards imposed by his teachers and by the Albuquerque District. *See* Tr. Vol. I at 116, 215-16; Tr. Vol V at 1118.

    c.  Assistive Technology is not methodology, and as such, school deference is inappropriate when they demonstrate lack of knowledge?

Plaintiff claims that both the DPHO and AAO's decision placed the District in the role of an "expert" who could choose the appropriate methodology for Plaintiff. Plaintiff argues that deference to a school district's decision is not due when inadequate expertise has been exercised.

14

Plaintiff argues that Defendant did not have adequately trained professionals assist in determining whether Plaintiff required the use of CART, and that, therefore, Defendant did not meet its responsibility of factoring in Plaintiff's unique needs when deciding what services to provide for him.   Before reaching the "meat" of their argument, Plaintiff suggests that assistive technology like CART is not really a methodology to be employed, or decided on, by the District, but, in actuality, a mandate under IDEA.  Pl's. Br. at 17.  Even if the Court takes Plaintiff's assertion as a correct interpretation of the Act, the wording that Plaintiff uses to suggest this mandate only specifies that each student has a "right to consideration of assistive technology to be supplied in accordance with unique needs." 20 U.S.C. §1414(d)(3)(B)(v).  This "consideration" has been met here, as acknowledged above, so the Court need not examine whether this technology is a methodology to be considered by the District.

      The evidence that Plaintiff uses to support the assertion that this "consideration" has not been met amounts basically to (1) the District's lack of knowledge that CART existed before being informed by Plaintiff's mother; (2) the education and training of the members of Plaintiff's IEP team; and (3) the time of the CART trial period only being nine weeks.

      It is an undisputed fact that Rye Gerry, a member of the District's assistive technology staff who specialized in visual impairment, did not know about CART before Plaintiff's mother mentioned it to her.  However, this lack of knowledge in no way prevented the District from considering and performing a trial run of the technology.  And, in an unpublished opinion, the Tenth Circuit held that IDEA does not require that special education service providers have

15

"every conceivable credential" relevant to a child's particular disability.[2] *T.W. v. Unified Sch. Dist. No. 259, Witchita, Ks.*, 136 Fed.Appx. 122, 127, 2005 WL 1324969 (10th Cir. 2005)(citing *Hartmann v. Loudoun County Bd. of Educ.*, 118 F.3d 996, 1004 (4th Cir. 1997).

Plaintiff's IEP team consisted of interpreters, two real time captioning service providers, Plaintiff's sponsor teacher (a certified sign language interpreter), a special education coordinator, a representative from the New Mexico School for the Deaf, another special education teacher, three general education teachers, an assistive technology specialist, a speech and language pathologist, an occupational therapist, a school psychologist, a job coach and others, including Plaintiff and his parents. *See* Def.'s Reply at 7. The Court finds that there was sufficient experience and expertise on this team to make a credible and reliable decision regarding Plaintiff's use of CART in the future.

The time period of the trial that the District chose seems reasonable for evaluating how a student would respond to new technology. Although Plaintiff's family might have been told from an expert outside the IEP that a year trial would be ideal for measuring improvement in Plaintiff's vocabulary, a nine-week trial was determined by the District to be a more manageable trial period, especially for something that might not eventually be implemented anyway. And, as Defendant points out, Plaintiff's expert testified that a range of trial times would have been appropriate, from six weeks to a semester. Tr. Vol. IV at 953.

Therefore, the Court finds that there was more than adequate consideration of assistive

---

[2]The Tenth Circuit Rule 36.3(B) states: "Citation to an unpublished decision is disfavored. But an unpublished decision may be cited to if: (i) it has persuasive value with respect to a material issue that has not been addressed in a published opinion; and (ii) it would assist the court in its disposition." This unpublished decision meets both these criteria, and the rules therefore allow citation to this unpublished decision.

technology for Plaintiff's unique needs as a student.

        d.      Plaintiff's lack of choice is education denied?

Plaintiff argues that because Plaintiff's choice in the technology for his use was not the sole factor in determining whether to use it on a permanent basis, his educational opportunity was denied. Plaintiff reasons that an older student's "independence, self-advocacy and success are all goals of IDEA" and that attendance and participation at IEP team meetings are encouraged from the age of 14 and on, so, therefore, the student's vote should be the deciding factor.

Contrary to Plaintiff's argument, Plaintiff is not, and probably should not be, the only voice in how his education is conducted. As Defendant notes, the Tenth Circuit has held that school districts did not need to use a family's preferred method of communication. *See O'Toole*, 144 F.3d at 692; *Logue v. Unified Sch. Dist.*, 153 F.3d 727 (table), 1998 WL 406787 at ** 5 (10th Cir. 1998). If that was the case, why would IDEA require having an IEP team at all to help make the appropriate decisions for both the Plaintiff and the District?

        e.      Agreement with the AAO's Analysis of *Rowley*

Despite Plaintiff's assertions to the contrary, the Court finds that the AAO correctly applied *Rowley* to the facts before her, by finding that the District had substantively and procedurally complied with IDEA. Giving her decision the due weight to which it is entitled, the Court affirms and finds that Plaintiff was not denied FAPE by not having CART provided to him.

The AAO appropriately examined each prong of the *Rowley* test as it applied to the decision to use CART. Plaintiff's procedural challenge was to the IEP process used to decide his fate. The AAO found that the "overwhelming evidence" in the record supported the idea that a properly composed IEP team gave serious consideration to the provision of CART for Plaintiff.

17

AAO Decision at 16.  The decision also took care to note that the IEP team reconvened and assessed the pros and cons of the real time captioning, allowing everyone's views to be heard, but decided against the use of the service for several articulable reasons.  *Id*. at 16-17.

The decision also properly addressed the substantive part, as to whether Plaintiff's current method of communication was providing him with a meaningful educational benefit.  As the decision points out, the real issue that Plaintiff wanted resolved "is whether Student progressed as quickly with an interpreter as he would have with real-time captioning."  *Id*. at 18.  This issue, however, is not even ever really in contention as the legal standard does not require that Plaintiff's progress is maximized, and the hearing record failed to show that real-time captioning would even achieve this goal.  *Id*. at 19.

Therefore, the AAO's decision that refusing to provide CART for Plaintiff did not deny him a FAPE was well-reasoned, correctly decided, and is affirmed.

3.      Appropriate Transition Services

The AAO found in favor of Defendant that appropriate transition services were provided to Plaintiff, while the DPHO did not.  *See* AAO Decision at 3, 21.  Under IDEA, an IEP must include for students fourteen years and older, a statement of transition services needs, and when the student turns sixteen, "a statement of interagency responsibilities and needed linkages." 20 U.S.C. §1414(d)(1)(A)(vii).  Transition services are defined as:

> A coordinated set of activities for a student, designed within an outcome-oriented process, which promotes movement from school to post-school activities, including post-secondary education, vocational training, integrated employment (including supported employment), continuing and adult education, adult services, independent living, or community participation.  The coordinated set of activities shall be based upon the individual student's needs, taking into account the student's preferences and interests, and shall include instruction, community experiences, the development of employment and other post-school adult living objectives, and when appropriate,

acquisition of daily living skills and functional vocational evaluation.

20 U.S.C. §1401(30).

The substantive basis of Plaintiff's complaint regarding deficiencies in this area center around Plaintiff's lack of accommodations for the PSAT and the PLAN test, two national standardized tests which are predictors for the SAT and the ACT, the two most prominent college entrance exams.  Plaintiff also complains of his guidance  counselor recommendations, and the lack of CART as not adequately preparing him for his post-secondary plans.

Plaintiff was unable to finish either his PSAT or PLAN tests because although it was acknowledged that more time would be needed for him, no time was ever set up for him to finish. Defendant tries to frame this issue as Plaintiff's responsibility, because Plaintiff wanted to eat lunch and not miss any more class. The Court is suspicious that a more likely culprit was lack of cooperation among Del Norte teachers and staff that prevented Plaintiff from ever finishing these two tests.  The Court does not consider Plaintiff's desire to attend all his classes something to fault him for, nor is it an acceptable reason for why the tests could not be scheduled for some other time, after school, for example.  We are also troubled that Plaintiff's high school counselor had never written an accommodation for testing deaf students, and did not know whose responsibility this was.  TR Vol. I at 260-62.

Further, the recommendations provided by District staff for Plaintiff's post-secondary career plans did not appear to be based on accurate or complete information.  The District transition specialist was directing Plaintiff to the Technical Vocational Institute ("TV-I")(a trade school) rather than the University of New Mexico ("UNM") based on "smaller class environment and ... support services that are available." TR Vol. II 444-50.  However, the program manager of

19

Deaf and Hard of Hearing Services from UNM also testified at the hearing that UNM had a full range of accommodations available for deaf students, including CART.  Tr. Vol. IV 1017-1040.

Plaintiff wants to link a lack of appropriate transition services to the District not supplying CART for his everyday use while still in high school.  While the Court may view the transition services separate from this as being problematic, we do not think that the denial of CART services should be considered part of this issue, and apparently neither did the AAO.

In the administrative review decision, it was noted that transitional services were addressed at each of Plaintiff's IEP meetings.  AAO Decision at 21.  The decision acknowledges that these plans could have been more thorough, but that Plaintiff's IEP was designed to help him reach his post-secondary goal of attending college by concentrating on his academic goals while still in high school. *Id*. at 21-22.  The AAO concluded that transition services were provided "to the extent appropriate" for a sophomore in high school. *Id*. at 22.

Because the AAO and the DPHO came to different results on this issue, but it is not an issue of credibility, the Court must give due weight to the AAO's decision.   Accordingly, although the Court is troubled by some of the facts presented to it, it is not our place to second-guess the decisions of either the school administration or the findings of the AAO, unless it is egregiously apparent that deficient transition services were provided.  Therefore, the transition services appear to adequately meet the requirements as set forth by the Act and the AAO's decision is affirmed.

4.     Defendant Objections: AAO remedies

Defendant appeals the choice of remedies that the AAO determined to be appropriate for the failings she found in Plaintiff's FAPE.  Both of these issues are addressed in turn.

20

a.      Neuropsychological Exam

Although Defendant claims in broad strokes that it was ordered to perform another neuropsychological exam on Plaintiff, its actual argument gets to the truth that it was only ordered to obtain the services of an educational behavior specialist to evaluate the results of an exam that had already been administered.  Def.'s Brf. at 22.  The AAO's order actually requires that the specialist join Plaintiff's IEP team and assist in the development of a behavioral intervention plan as well.  AAO Decision at 29.  The decision does not state, however, that this specialist necessarily must be "hired" by the District; instead, it specifically states that, "[i]f the District does not have a qualified educational specialist on staff, an outside consultant chosen by Parents shall be hired."  *Id.* at 30.

Defendant claims that the AAO erred in deciding an issue that was not before her, and cites to a 1968 New Mexico mortgage action to support this assertion. This argument holds no weight.  The Supreme Court has held that reviewing courts can affirm hearing officers' equitable decisions, and that the power of judicial review brings with it broad discretion for appropriate relief. *See Sch. Comm. of the Town of Burlington, Mass. v. Dept. of Educ. of Mass*, 471 U.S. 359, 370 (1985) (holding that hearing officer's decision to reimburse parents for sending children to private school instead of public school was appropriate).  The AAO did not come up with this remedy on a whim, to be sure.  Instead, a specialist's evaluation was surely intended to help the District fashion a proper environment for Plaintiff's academic success.  Therefore, for the reasons above, this remedy is affirmed.

b.      Hiring An Outside Note Taker

Defendant also objects to the remedy prescribed for Plaintiff's U.S. History class: hiring an

outside note taker instead of employing a fellow student within the class.  Defendant claims that the AAO acted outside of her discretion in granting this sort of relief.  The AAO's order indicates that this relief was prescribed because the student note takers that had been employed previously were not doing an adequate enough job.  The first note taker was not taking comprehensive enough notes and the second note taker was apparently writing too lightly. *Id*. at 22, 30.

Defendant claims that with two note takers in place, the accommodations for Plaintiff were working well enough that the AAO did not need to order a remedy.  However, Plaintiff apparently only started receiving the services of the second note taker right before his hearing, after two months of his class had already occurred.  *Id*. at 22.  Perhaps, the AAO did not see the wisdom of making Plaintiff sift through two pairs of questionable notes from volunteers when a hired note taker would be able to definitely provide this needed service to Plaintiff.  The AAO was well within her rights to order this remedy and it is affirmed.

5.      Remainder of the AAO Decision

Although Plaintiff claims to seek review of the rest of the administrative decision, for which each issue was found in favor of Defendant, they have not briefed why these decisions should be reversed, although the burden is on them to do so.  Defendant has at least briefly addressed each of these decisions, but as the Plaintiff has not, it is unnecessary for us to review them.  Plaintiff has not carried his burden in regard to the issues of (1) teacher training and certification; (2) need for an ASL II class; and (3) Closed Captioning.  Therefore, the Court affirms the decision of the AAO regarding these matters.

**III.    Section 504 and ADA Claims**

**A.      Discussion**

Plaintiff brought Section 504 and ADA claims with his earlier administrative claims as well, but they were denied for a lack of requisite intent.  AAO Decision at 25-27.  Now these claims have again been brought by Plaintiff separately, and not under the guise of an administrative review.  Therefore, the Court would examine them under the summary judgment standard pursuant to Defendant's motion.

> 1.      Section 504 Claim and Title II ADA Claim

The Rehabilitation Act of 1973 (Section 504) reads:

> No otherwise qualified handicapped individual ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. §794.

Title II of the Americans with Disabilities Act reads:

> No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

Plaintiff's Complaint alleges that both Title II and Section 504 are violated by, "the District's structure and practices for delivery of education to students who are deaf or hard of hearing intentionally denies them access to public education and educational opportunity."  Pl.'s Compl. at 7.  Although Plaintiff maintains that these claims are different from their IDEA claims, in much of their substance they appear strikingly similar.  Indeed, the only difference that this Court could detect were the allegations in Plaintiff's Complaint of a conspiracy to increase enrollment at the New Mexico School for the Deaf.  *Id*. at 5-6.  This idea is further reinforced by the briefing involved in Defendant's Motion for Summary Judgment, which focuses almost

23

exclusively on the real-time captioning issue, and very slightly on the other elements of Plaintiff's Complaint (closed-captioning, interpreter sign language usage, transition services etc.), which were also heretofore administrative claims.

Defendant asserts that because the nature of all of Plaintiff's claims are essentially the same, the Court should look to the results of the IDEA claims when conducting its analysis, or to preclude analysis at all.  In *Urban v. Jefferson County School District*, the Tenth Circuit held that the regulations under Section 504, Title II and IDEA were analyzed similarly, and that the denial of an IDEA claim precluded analysis of a Section 504 claim, while the Section 504 claim was informed by looking at Title II.  89 F.3d 720, 727-28 (10th Cir. 1996).  Many other circuits have agreed with this analysis, and have explicitly stated that judicial review of IDEA claims precludes the same claims being brought under Section 504 and Title II.  *See Pace v. Bogalusa City. Sch. Dist.*, 325 F.3d 609, 621-23 (5th Cir. 2005) (decision against parents on IDEA claim precluded litigation of same claim under Section 504 and Title II); *Indep. Sch. Dist. No. 283 v. S.D.*, 88 F.3d 556, 562 (8th Cir.1996); *see also  Burilovich v. Bd. of Educ.*, 208 F.3d 560 (6th Cir.2000) (dismissing ADA, Rehabilitation Act, and state law claims because the plaintiff was offered a FAPE under the IDEA).

 Plaintiff tries to rebut Defendant's assertion that a denial of an IDEA claim would preclude the same claim being brought under Section 504 and Title II, but while doing so manages to dig himself into somewhat of a hole.  Plaintiff cites to *Hornstine v. Township of Moorestown*, a District of New Jersey case, for the proposition that IDEA is a basic floor of analysis while the other Sections require a greater showing of discrimination, and are "intended to reach 'grosser kinds of misconduct' than the IDEA," so that, therefore, the analysis is different.

24

263 F.Supp.2d 887, 901 (D.N.J. 2003).  As all of Plaintiff's claims under Section 504 and Title II did not even survive the basic floor of an IDEA claim, though, there is no way that they could live up to the kind of gross misconduct required for Section 504 and Title II as well.

At this point, the Court is inclined to believe that all of Plaintiff's claims under Section 504 and Title II are precluded.  Therefore, summary judgment is granted as to the claims.

     3.     Title III and V of the ADA

Defendant asserts that these claims, which are mentioned generally in Plaintiff's Complaint, should be dismissed as they are not applicable at all to the facts before the Court.  A claim brought under Title III fails as a matter of law as APS is not a private entity. 42 U.S.C. §12181(6) and (7).   Title V prohibits retaliation against one who asserts his rights under the ADA (42 U.S.C. §12203), and Plaintiff has not alleged by facts to support this claim of retaliation.  As Plaintiff does not acknowledge these claims in his response brief, he has not carried his burden that a genuine issue exists as to these claims.   Therefore, summary judgment is granted to Defendant as to these claims.

Wherefore,

**IT IS ORDERED** that Defendant Albuquerque Public School's Motion for Judgment on IDEA Claims, filed July 19, 2005 (*Doc. 68*) is **granted in part and denied in part:**

(1)     Plaintiff's claims that were not asserted at the administrative level are dismissed for failure to exhaust administrative remedies.

(2)     The AAO's decisions in favor of APS on Plaintiff's claims are affirmed.

(3)     Defendant's counter-claims are dismissed, and the AAO decision regarding them is affirmed;

**IT IS FURTHER ORDERED** that Plaintiff's IDEA Brief in Chief, filed July 26, 2005

(Doc. 72) is **denied**:

(1)     The Court will not consider additional evidence on IDEA issues;

(2)     The AAO correctly interpreted and applied *Rowley*;

(3)     The AAO decision regarding assistive technology (CART) and transition services
is affirmed.

**IT IS FINALLY ORDERED** that Defendant APS' Motion For Summary Judgment On

Plaintiffs' Section 504 And ADA Claims,  filed October 27, 2005 (*Doc. 78*) is **granted** as to all

claims.

DATED May 1, 2006.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**


Counsel for Plaintiff:

        Gail Stewart, Esq.
        Steven Granberg Attorney at Law, P.A.
        Albuquerque, New Mexico

        Tara Ford, Esq.
        Pegasus Legal Services for Children
        Albuquerque, New Mexico

Counsel for Defendants:

        Michael L. Carrico, Esq.
        Attorney for Albuquerque Public Schools
        Modrall, Sperling, Roehl, Harris & Sisk, P.A.
        Albuquerque, New Mexico